UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------
JACK J. GRYNBERG, *et ano.*,

               Plaintiffs,

      -against-

U.S. DEPARTMENT OF JUSTICE,

               Defendant.

------------------------------------------------

17cv723

OPINION & ORDER

WILLIAM H. PAULEY III, District Judge:

        The United States Department of Justice moves for summary judgment dismissing this Freedom of Information Act ("FOIA") action by Jack J. Grynberg and Grynberg Petroleum Company (together, "Grynberg"). Grynberg seeks documents collected by the United States Attorney's Office for the Southern District of New York ("USAO") in connection with its investigation and prosecution of James Giffen. The Government claims that these documents are exempt from production. For the reasons that follow, the Government's motion for summary judgment is granted and this action is dismissed.

### BACKGROUND

        Grynberg's litigation exploits verge on the legendary. Over the past fifteen years, Grynberg and entities he controls have filed hundreds of lawsuits seeking to recover a 20% stake in a major oil field located in the Caspian Sea near Kazakhstan. See, e.g., In re Grynberg, 223 F. Supp. 3d 197, 199 (S.D.N.Y. 2017) (application to conduct discovery for use in a Swiss proceeding); Grynberg v. BP P.L.C., 318 F.R.D. 533, 535–36 (D.D.C. 2016); Pricaspian Dev. Corp. v. Total S.A., 2009 WL 4163513 (S.D.N.Y. Nov. 25, 2009). Grynberg has pursued these claims around the globe. In re Grynberg, 223 F. Supp. 3d at 199.

In 2003, the Government charged Giffen with violations of the Foreign Corrupt Practices Act alleging that he made payments to senior Kazakh officials and steered oil exploration and development rights in Kazakhstan to a consortium of oil companies. See United States v. Giffen, 326 F. Supp. 2d 497, 499–501 (S.D.N.Y. 2004). Those charges included allegations relating to the oil field in which Grynberg claims an interest. See Giffen, 326 F. Supp. 2d at 499–500; BP P.L.C., 318 F.R.D. at 535. In November 2010, Giffen pled guilty to a single misdemeanor count of willfully failing to supply information regarding foreign bank accounts on his tax returns. (Judgment in a Criminal Case, No. 3-cr-404, ECF No. 214.)

In May 2013, Grynberg submitted a FOIA request to the Department of Justice seeking all of the USAO's files related to the Giffen prosecution in this District. (See Declaration of Tricia Francis, ECF No. 48 ("Francis Decl.") Ex. A.) That request was denied. (Francis Decl. Ex. C) In August 2013, Grynberg made a second request, narrowing the scope to: (1) public records; (2) corporate records; and (3) bank records. (Francis Decl. Ex. G.) In October 2013, the USAO conducted a preliminary search and concluded that it had no responsive documents. (Francis Decl. Ex. K.) Grynberg appealed, and the Office of Information Policy remanded his FOIA request back to the USAO for an additional search. (Francis Decl. Exs. N, O.)

While that review on remand was underway, in September 2015, Grynberg further cabined his request to: (1) bank records; (2) records from British Petroleum ("BP"), and (3) court transcripts. (Francis Decl. Ex. R.) Between December 2015 and November 2016, the USAO searched intermittently for responsive documents. (Francis Decl. ¶ 33.)

In October 2016, Grynberg filed this lawsuit in the United States District Court for the District of Colorado, alleging that the Government was wrongfully withholding the

requested documents. (Compl. ¶ 20). The Colorado District Judge ordered an initial review and production of certain documents, and thereafter granted the parties' request to transfer the case to this Court. (Order, ECF No. 26.)

Subsequently, the Government conducted a broad review of approximately 230 bankers' boxes containing documents collected during the Giffen prosecution. (Francis Decl. ¶ 44.) Documents not identified as exempt under FOIA on an initial review were scanned and logged into a 300-page index. (Francis Decl. ¶ 45.) Later, on closer examination, the Government determined that the majority of the logged documents were exempt. (Francis Decl. ¶ 46–47.) It therefore withheld all documents except publicly available records. (Francis Decl. Exs. U, V.)

## LEGAL STANDARD

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." N.Y. Times v. U.S. Dep't of Justice, 101 F. Supp. 3d 310, 317 (S.D.N.Y. 2015). A court reviews an agency's response to a FOIA request de novo. A. Michael's Piano, Inc. v. F.T.C., 18 F.3d 138, 143 (2d Cir. 1994). The agency bears the burden of defending non-disclosure. Main Street Legal Servs. v. Nat'l Sec. Council, 811 F.2d 542, 544 (2d Cir. 2016). It must show "that its search was adequate and that any withheld documents fall within an exemption." Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden" and "are accorded a presumption of good faith." Carney, 19 F.3d at 812 (internal citation omitted).

FOIA enumerates nine exemptions to disclosure. See 5 U.S.C. § 552(a)(3)–(b). These exemptions are construed narrowly, as "disclosure, not secrecy, is the dominant objective of [FOIA]." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976). "[T]he Government must disclose any document that does not fall within one of FOIA's nine exemptions." Am. Civil Liberties Union v. F.B.I., 2015 WL 1566775, at *1 (S.D.N.Y. Mar. 31, 2015). Non-exempt information must be disclosed "if it is reasonably segregable from exempt portions." Army Times Pub. Co. v. Dep't of Air Force, 998 F.2d 1067, 1071 (D.C. Cir. 1993).

DISCUSSION

A. The Scope of Grynberg's FOIA Request

As an initial matter, the parties dispute the scope of Grynberg's request—namely, whether Grynberg improperly narrowed the scope of requested documents during the pendency of this litigation. Grynberg's motion papers make clear that he seeks only bank records and records from BP. The Government asserts that this limited request was not clearly established and that it assumed Grynberg continued to press his request for the entire Giffen file.

"[N]o statute requires a court to allow FOIA modifications during the course of litigation." Serv. Women's Action Network v. Dep't of Def., 2013 WL 1149946, at *3 (D. Conn. Mar. 19, 2013). For this reason, courts in this Circuit have refused to consider a belated narrowing of a FOIA request during the pendency of a litigation. See Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement, 2017 WL 1494513, at *13 (S.D.N.Y. Apr. 19, 2017); Viet. Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec., 8 F. Supp. 3d 188, 203 (D. Conn. 2014) ("[I]t is proper for the court to rule on the only request actually before it.") (internal citation and alteration omitted).

4

The Government argues that the Complaint vaguely asks this Court to "order DOJ to produce all responsive agency records" which would entail all documents collected during the Giffen investigation. (Compl. at 4.) But Grynberg modified his request during the administrative stage of the FOIA process prior to filing this lawsuit. (Francis Decl. Ex. R.). That Grynberg pared the scope of his request during the administrative proceedings distinguishes this case from National Day Laborer Organizing Network. 2017 WL 1494513, at *13. In that case, the FOIA requester only narrowed the FOIA request when confronted with a motion for summary judgment. Since September 2015, Grynberg has maintained the same circumscribed request. Accordingly, this FOIA action addresses only Grynberg's requests for bank records and records from BP.[1]

B. Grand Jury Materials

Initially, the Government invoked five exemptions to what it considered to be Grynberg's request for all Giffen-related documents. When it became clear that Grynberg sought only bank records and BP records, the Government focused its argument on 5 U.S.C. § 552(b)(3) ("Exemption 3").

FOIA Exemption 3 blocks the production of records "exempted from disclosure by statute if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). A court reviewing an agency's decision to withhold documents pursuant to Exemption 3 considers two questions: "(1) whether the statute in question is a withholding statute, and if so (2) whether the withheld material qualifies under that statute." Kuzma v. U.S. Dep't of Justice, 692 F. App'x 30, 33 (2d

---

[1] The Government has produced all publicly available records contained in the Giffen file, and Grynberg appears to agree that his request for court transcripts has been satisfied. (See Francis Decl. ¶ 49; Letter, ECF No. 39.)

Cir. 2017) (summary order) (citing C.I.A. v. Sims, 471 U.S. 159, 167 (1985)); see Am. Civil Liberties Union v. Dep't of Justice, 681 F.3d 61, 72–73 (2d Cir. 2012). Unlike other FOIA exemptions, Exemption 3 "depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." Goland v. C.I.A., 607 F.2d 339, 350 (D.C. Cir. 1978).

The Government asserts that all documents within the two categories that Grynberg seeks "were obtained either from Switzerland via the [Mutual Legal Assistance Treaty with Switzerland (the "U.S.-Swiss MLAT" or "MLAT")] or via a grand jury subpoena." (Supplemental Declaration of Darian Hodge, ECF No. 57 ¶ 4; see also Hearing Transcript, ECF No. 64 ("Hr'g Tr."), 5:14–18.) This representation is entitled to the presumption of good faith. Carney, 19 F.3d at 812.

Beginning with the grand jury materials, "requests for documents related to grand jury investigations implicate FOIA's third exemption because Rule 6(e) of the Federal Rules of Criminal Procedure prohibits government attorneys and others from disclosing a matter occurring before the grand jury." Lopez v. Dep't of Justice, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (internal citation and alterations omitted); see also Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO v. Gen. Servs. Admin., 1998 WL 726000, at *6 (S.D.N.Y. Oct. 15, 1998) (same). "Rule 6(e) embodies a long established policy of the federal courts to maintain the secrecy of grand jury proceedings." United States v. Interstate Dress Carriers, Inc., 280 F.2d 52, 54 (2d Cir. 1960).

This exemption clearly protects documents that are "actually presented to the grand jury." N.Y. Times Co. v. U.S. Dep't of Justice, 235 F. Supp. 3d 522, 531 (S.D.N.Y. 2017) ("Rule 6(e) does not expressly define what constitutes a matter occurring before the grand jury,

6

but at its core, [it] protects from disclosure evidence that is actually presented to the grand jury."). But here, the Government argues that it also exempts documents subpoenaed by the grand jury, even if they were never actually shown to the grand jury. (See Francis Decl. ¶ 54.)

Courts recognize that Rule 6(e) protects anything revealing "the identities of [grand jury] witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." N.Y. Times Co., 235 F. Supp. 3d at 531 (quoting S.E.C. v. Dresser Indus., 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)). The Government claims that turning over documents subpoenaed by the grand jury would reveal the strategy or direction of the grand jury investigation.

In Germosen v. Cox, 1999 WL 1021559, at *13 (S.D.N.Y. Nov. 9, 1999), the court agreed that Rule 6(e) "encompasses documents subpoenaed as exhibits as well as potential documentary exhibits, which if turned over, would reveal the direction and strategy of an investigation." The Germosen court went on to determine that "Rule 6(e) imposes no requirement that materials actually be presented to the grand jury in order to fall within the rule's scope." Germosen, 1999 WL 1021559, at *13 (citing In re Grand Jury Subpoena, 103 F.3d 234, 237 (2d Cir. 1996) ("The plain language of [Rule 6(e)] shows that Congress intended for its confidentiality provisions to cover matters beyond those actually occurring before the grand jury.").

The same conclusion was reached one year earlier in Local 32B-32J, 1998 WL 726000, at *6. And in In re Grand Jury Investigation B-15-1, 2016 WL 110002, at *4 (D. Conn. Jan. 8, 2016), the court held that "the very fact that certain documents have been requested by and produced to the grand jury may unavoidably and improperly disclose information about the grand jury's investigation." See also Peltier v. F.B.I., 2005 WL 735964, at *11–12 (W.D.N.Y.

7

Mar. 31, 2005) (same). The Sixth Circuit has also taken this view. See In re Grand Jury Proceedings, 851 F.2d 860, 865 (6th Cir. 1988) ("Even documents sought for their own sake may, when considered in the aggregate and in their relationship to one another, make possible inferences about the nature and direction of the grand jury.").

This Court reaches the same conclusion. The Government avers that producing records subpoenaed by the grand jury would "publicly reveal the scope and secret aspects of the grand jury investigation by showing where the Government sought its evidence, the sources of information it had relied on to develop the facts of its investigation, and the steps that the Government anticipated taking and actually took in furtherance of the investigation." (Francis Decl. ¶ 54.) Grynberg fails to rebut this proposition. In the context of this criminal investigation, the Government's possession of these records establishes a strong likelihood that they were produced pursuant to a grand jury subpoena. (See Hr'g Tr. at 17:13–20.)

According to the Government, the documents are readily identifiable as responsive to grand jury subpoenas based on their Bates numbers. (Francis Decl. ¶ 54.) Other circuits have held that it is "reasonable for an agency to withhold any document containing a grand jury exhibit sticker or that is otherwise explicitly identified on its face as a grand jury exhibit, as release of such documents reasonably could be viewed as revealing the focus of the grand jury investigation." Church of Scientology Int'l v. U.S. Dep't of Justice, 30 F.3d 224, 235 n.15 (1st Cir. 1994); accord Labow v. U.S. Dep't of Justice, 831 F.3d 523, 530 (D.C. Cir. 2016).

Grynberg's reliance on John Doe Corporation v. John Doe Agency is misplaced. John Doe Corp. v. John Doe Agency, 850 F.2d 105 (2d Cir. 1988), rev'd on other grounds, 493 U.S. 146 (1989). John Doe Corp. only held that "[a] document that is otherwise available to the public does not become confidential simply because it is before a grand jury" and that "no such

8

showing ha[d] been made in the instant case." John Doe Corp., 850 F.2d at 109 (emphasis added). The Second Circuit remanded the case to the district court for a determination on whether "any particular matter . . . would, if disclosed, expose some secret aspect of the grand jury's investigation." John Doe Corp., 850 F.2d at 110.

This Court's determination is also not precluded by United States v. Interstate Dress Carriers, Inc. 280 F.2d 52, 54 (2d Cir. 1960). There, the Interstate Commerce Commission ("ICC") sought documents from Interstate Dress Carriers ("Interstate"), a trucking company. Interstate, 280 F.2d at 53. Interstate argued that because those documents had been subpoenaed by a federal grand jury, production would violate grand jury secrecy. Interstate, 280 F.2d at 53. The Second Circuit rejected this argument, largely because the ICC had initially requested the documents from Interstate, not the Government, and the ICC was acting pursuant to its own "lawfully authorized investigation." Interstate, 280 F.2d at 54. Thus, the parallel proceeding before a grand jury was irrelevant because "[d]ocuments produced pursuant to a grand jury subpoena remain the property of the person producing them." Interstate, 280 F.2d at 54. The Second Circuit reinforced the need for courts to determine whether disclosure of grand jury materials "would be in violation of Rule 6(e)." 280 F.2d at 54; see also In re Grand Jury Investigation B-15-1, 2016 WL 110002, at *3–4 (describing that in Interstate Dress Carriers, the ICC "had an independent statutory basis for requesting the documents" and made requests "to the party who produced the documents in the first instance").

This approach is also a sensible policy, in light of a grand jury's extraordinarily broad coercive powers and the Government's fundamental interest in keeping grand jury proceedings secret. See In re Grand Jury Proceedings, 851 F.2d at 866 ("It makes no sense to construe rule 6(e) in a way that would wholly exempt such confidential information extracted by

9

compulsion from the safeguard against grand jury abuse that judicial supervision normally provides.").

C. MLAT Materials

The Government asserts that all bank records and BP records not obtained via grand jury subpoenas were obtained from Switzerland via the MLAT. (See Mutual Assistance in Criminal Matters, U.S.-Switz., Jan. 23, 1977, 27 U.S.T. 2019, 1977 WL 181784 ("MLAT").) Whether materials received through an MLAT qualify under Exemption 3 has not been widely analyzed. The only judicial opinion delving into this issue is Dongkuk International, Incorporated v. United States Department of Justice, 204 F. Supp. 3d 18 (D.D.C. 2016).

In Dongkuk, the court analyzed the "novel question" of whether a document "sent by the Korean Ministry of Justice to [the] United States Department of Justice (DOJ) pursuant to an MLAT between the United States and the Republic of Korea" was subject to public disclosure under FOIA. Dongkuk, 204 F. Supp. 3d at 20.

Because the U.S.-Korea MLAT was a self-executing bilateral treaty ratified by the Senate, the court first found that it qualified as a "statute" for purposes of Exemption 3. Dongkuk, 204 F. Supp. 3d at 25. Turning to whether the MLAT also qualified as a withholding statute within Exemption 3's parameters, the court found that it fell within the exemption's final clause because it "'refer[red] to particular types of matters to be withheld,' namely, requests for assistance." Dongkuk, 204 F. Supp. 3d at 28 (quoting 5 U.S.C. § 552(b)(3)). In other words, the MLAT limited what was to be kept confidential: "a request and its contents if such confidentiality is requested by the Central Authority of the Requesting State." Dongkuk, 204 F. Supp. 3d at 28. This was specific enough to qualify as a "particular type of matter" for Exemption 3. Dongkuk, 204 F. Supp. 3d at 28. This conclusion was reinforced by the fact that

Congress specifically ratified the U.S.-Korea MLAT with the understanding that it required the "United States to use its 'best efforts' to maintain confidentiality." Dongkuk, 204 F. Supp. 3d at 28.

The reasoning in Dongkuk is persuasive. Like the U.S.-Korea MLAT, the U.S.-Swiss MLAT is a Senate-ratified self-executing treaty. (See MLAT, art. 41 ("The Treaty shall enter into force 180 days after the date of the exchange of the instruments of ratification.").) It therefore has the force of law and qualifies as a statute. See Whitney v. Robertson, 124 U.S. 190, 194 (1888) ("[A] treaty is placed on the same footing, and made of like obligation with an act of legislation.").

Also like the MLAT analyzed in Dongkuk, the U.S.-Swiss MLAT establishes a particular type of matter to be withheld. Article 10 requires Switzerland to produce "evidence or information which would disclose facts which a bank is required to keep secret or are manufacturing or business secrets" if the United States's request concerns a prosecution of a serious offense, the disclosure would provide significant facts in that proceeding, and the United States already made reasonable but unsuccessful efforts to obtain the same evidence. (MLAT, art. 10, ¶ 2.) Article 15 provides that evidence disclosed pursuant to Article 10 "shall, if <u>in the opinion of that state its importance so requires and an application to that effect is made</u>, be kept from public disclosure to the fullest extent compatible with constitutional requirements in the requesting state." (MLAT, art. 15 (emphasis added).) Article 5, which provides that any documents obtained pursuant to the MLAT "shall not be used for investigative purposes nor be introduced into evidence . . . in any proceeding relating to an offense other than the offense for which assistance has been granted" is also relevant. (MLAT, art. 5.)

11

Like the MLAT in Dongkuk, this MLAT's description of what is to be withheld is limited to a particular type of matter narrow enough for Exemption 3: documents provided under Article 10, when accompanied with "an application" requesting the documents be kept private.

The only remaining question is whether the Giffen materials were produced pursuant to this language. A Department of Justice attorney responsible for processing Swiss MLAT requests asserts that "it is understood that all of the articles contained in the U.S.-Swiss MLAT, even if not specifically invoked, apply to all evidence and information provided by either country." (Ford Decl. ¶ 8.) This understanding is entitled to deference. See Sumitomo Shoji Am. v. Avagliano, 457 U.S. 176, 184–85 (1982). Further, the documents obtained in this case were bank records, meaning they were subject to both Article 5 and Article 10, paragraph 2. (See Ford Decl. ¶ 43.)

Finally, and most importantly, the Government determined that all MLAT materials obtained in the Giffen prosecution contained cover letters "includ[ing] the standard language used when the Swiss Federal Office of Justice transmits evidence to the United States pursuant to the [MLAT]." (Hodge Decl. ¶ 21.) This language states that the materials are "provided for by art. 5 of the [MLAT]" and that "any public disclosure . . . including disclosure pursuant to Freedom of Information Act requests . . . would violate the laws applicable to [the Swiss authorities]." (Ford Decl. ¶ 7.) While Grynberg challenges the Government's failure to produce these cover letters to substantiate this representation, his "purely speculative claims" are not enough to supersede the "presumption of good faith." See Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 488–89 (2d Cir. 1999).

Switzerland produced these documents pursuant to the MLAT's confidentiality provisions, with an understanding that they would not be used in other proceedings or produced

12

in response to FOIA requests.  It also included an application requesting they be kept private, as shown through the cover letters.  And "the emphasis on maintaining confidentiality of assistance requests" seen throughout the U.S.-Swiss MLAT makes this Court "doubt that Congress intended for [these documents] to be available under FOIA."  Dongkuk, 204 F. Supp. 3d at 28.

CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment dismissing this FOIA action is granted.  The Clerk of Court is directed to terminate all pending motions and mark this case as closed.

Dated: February 1, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.